973 F.2d 128
 23 Fed.R.Serv.3d 493
 COLTRADE INTERNATIONAL, INC., Plaintiff,
v.
UNITED STATES of America, Plaintiff-Appellee,
Gerald B. Horn, Appellant,
$200,930.00, More or Less, Defendant,
United States Customs Service; Regional Commissioner of
Customs of New York; Area Director of Customs at
John F. Kennedy International Airport,
Defendants-Appellees.
 Nos. 1401, 1607, Dockets 91-6313, 91-6315.
 United States Court of Appeals,
Second Circuit.
 Argued May 8, 1992.
Decided Aug. 21, 1992.
 
 Jane Simkin Smith, New York City (Larry J. Silverman, of counsel), for appellant.
 Richard Goldstein, Asst. U.S. Atty., Brooklyn, N.Y. (Andrew J. Maloney, U.S. Atty. for the E.D.N.Y., Robert L. Begleiter, Deborah B. Zwany, Asst. U.S. Attys. and Michael J. Gunnison, Sp. Asst. U.S. Atty., of counsel), for defendants-appellees.
 Before LUMBARD, FEINBERG, and McLAUGHLIN, Circuit Judges.
 LUMBARD, Circuit Judge:
 
 
 1
 Gerald Horn appeals from an order of the District Court for the Eastern District of New York, Platt, Chief Judge, which imposed sanctions on Horn and Coltrade International, Inc. ("Coltrade") pursuant to Fed.R.Civ.P. 11 and 28 U.S.C. § 1927. Horn represented Coltrade in proceedings before Customs and in the district court concerning the seizure by Customs of $200,903 from Ruben Restrepo, Vice President of Coltrade, at Kennedy Airport on November 18, 1986. For the reasons set forth below, we vacate the order of the district court and remand for further proceedings.
 
 
 2
 The record in the district court shows the following facts to be undisputed: Restrepo was arrested at Kennedy while about to fly to Medellin, Colombia with $200,903 in cash hidden in his suitcase in Play-Doh putty containers, sheets, and a flashlight. Restrepo had declared only $11,500 cash on his Customs forms. When arrested, Restrepo stated to Customs agents that the money belonged to his cousin, Jeffrey Restrepo. However, in his petition for remission of the funds, filed two months later, on January 15, 1987, he claimed that the money belonged to Coltrade, which imported records, cassettes, and brown sugar from Colombia, and that he, as Vice President, was bringing the cash to pay Colombian creditors. Restrepo claimed to have misunderstood the reporting requirements, and thought he need only declare the money he was carrying on him personally, but not the cash located in his suitcase.
 
 
 3
 Restrepo eventually pleaded guilty to one violation of 31 U.S.C. § 5316 for his failure to declare the cash, and on April 10, 1987 he was sentenced by Judge Platt to five years probation, a $25,000 fine, and a $50 special assessment.
 
 
 4
 Following sentencing, in a letter to Customs dated September 15, 1987, Restrepo through his attorney, Lawrence H. Herrman, again sought remission of the seized currency on behalf of Coltrade. He had specifically elected to have his petition considered administratively, thereby waiving his right to refer the matter immediately to the United States Attorney, by way of his response on the "Election of Proceedings" form provided by Customs accompanying his earlier petition for remission. Restrepo claimed to be carrying the money on behalf of Coltrade. He claimed that Coltrade's income was deposited in various bank accounts, and was later withdrawn in hundred dollar denominations and placed in the safe in Coltrade's store. The money was to be used to pay debts to Latin American suppliers who offered discounts for cash payments. In support of these claims Restrepo submitted the affidavits of officers and directors of Coltrade, who stated that Restrepo often travelled to Latin America to pay the company's suppliers. Restrepo also submitted Coltrade's tax returns in support of these claims.
 
 
 5
 On December 7, 1987, Customs denied the petition for remission of the funds to Coltrade, finding no credible claim of ownership. Despite Restrepo's claims that Coltrade accumulated $200,000 cash between 1984 and 1986, the company's tax return for 1985 showed a net loss of $6,300, and total cash reserves of only $17,238. Furthermore, there was no documented evidence of bank withdrawals in $100 denominations.
 
 
 6
 Customs officials wrote Restrepo on December 7, 1987 that the matter would be turned over to the United States Attorney for judicial forfeiture proceedings within thirty days. Following Customs' ruling, Coltrade retained Gerald B. Horn of the law firm of Soller, Singer & Horn. In a letter to Customs, dated December 22, 1987, Horn urged Customs officials to delay reference of the matter to the United States Attorney and to extend the administrative proceedings and allow him to submit additional information on behalf of Coltrade. Customs granted the request.
 
 
 7
 On February 5, 1988, Horn submitted to Customs a "petition for further review" on behalf of Coltrade. For the first time, Horn argued that Restrepo's actions were ultra vires, and that he did not have the company's permission to take the money from the company safe. Once again, Customs refused to turn over the seized assets, finding that Coltrade failed to establish ownership of the funds.
 
 
 8
 On May 27, 1988, Horn filed a petition for mandamus in the district court to compel Customs to release the funds to Coltrade. Horn alleged that the funds in question had been found to have a legitimate source and use, that the government improperly delayed commencement of judicial forfeiture proceedings, and that the delay in returning the seized funds was causing irreparable harm, as Coltrade was being sued by a Colombian record supplier, Prodiscos, for $124,000.
 
 
 9
 The government claimed the petition was misleading in a number of ways. First, though Horn stated that the seized funds "have been found to have a legitimate source and use," no such finding had been made by the district court. Furthermore, despite his claim of inexcusable delay in commencing the forfeiture proceedings, Horn failed to inform the court that the delay was caused in part by his own request that Customs postpone forwarding the case to the United States Attorney. With regard to the Prodiscos suit, the government produced evidence indicating that the suit was merely a collusive attempt to establish a legitimate use for the funds, and that Coltrade owed Prodiscos only $22,000, not $124,000. Judge Platt denied the petition for mandamus.
 
 
 10
 In the civil forfeiture action, both sides moved for summary judgement. Horn again argued on behalf of Coltrade that Restrepo's actions were ultra vires, and that the funds should be returned to Coltrade, as the rightful owner. The government countered that Coltrade had not established a sufficient ownership interest in the cash. Despite Coltrade's arguments that the $200,000 belonged to the company, the company's tax returns showed a net cash flow loss for the years Coltrade was supposedly piling up $100 bills. Furthermore, Coltrade never reported the loss of the money despite its claim that Restrepo improperly removed it from the company safe without the company's knowledge or permission, nor were there any shareholder suits alleging director negligence or misconduct. In fact, Coltrade, the victim of the alleged embezzlement, put up Restrepo's bail and paid his fine.
 
 
 11
 In support of the their motion for summary judgement, the government also submitted evidence indicating that the bank withdrawal slips produced by Coltrade to establish the withdrawal of money in $100 denominations were fabricated. Many of the checks were altered with "white out"; others contained the notation "100s" on them, but, according to bank copies, did not contain that notation at the time the checks were cashed, indicating that the marks were added at a later date. Other checks had not even been cashed until after Restrepo's arrest.
 
 
 12
 The government showed that at the time of the seizure, Coltrade's debt to Prodiscos was $22,000, not $124,000 as claimed by Horn. The government also submitted evidence indicating that the entire Prodiscos lawsuit was fabricated to support Coltrade's position in the mandamus and forfeiture proceedings.
 
 
 13
 On February 17, 1989, Judge Platt granted the government's motion for summary judgement and found that the money was subject to forfeiture. He found that Coltrade's "innocent owner" defense was without merit, given the fact that Coltrade did not report the alleged embezzlement to authorities and actually lent Restrepo money for his bail and fines. He stated that the various positions taken by Coltrade throughout the proceedings were inconsistent and often frivolous, and that some of the testimony and affidavits were "clearly contradictory" or "irreconcilable." He also granted the government's motion for sanctions under Rules 11 of the Federal Rules of Civil Procedure and 28 U.S.C. § 1927, and awarded the government $69,744.20.
 
 
 14
 As the order did not clearly specify on whom the sanctions were imposed, Horn or Coltrade, the government requested clarification of the order. Judge Platt referred the matter to Magistrate Ross, who determined that pursuant to Rule 11 the sanctions should be awarded against Horn personally in the amount of $34,872.10 and against Horn and Coltrade, jointly and severally, for $34,872.10. The district court adopted the magistrate's report. Horn now appeals.[1]
 
 
 15
 Judge Platt imposed sanctions against Horn based on his finding that the arguments made by Horn on behalf of Coltrade were "frivolous," "without merit," "clearly inconsistent," and "irreconcilable." He did not, however, specify whether the sanctions were awarded pursuant to Rule 11 or 28 U.S.C. § 1927, nor did he indicate the specific papers or conduct which warranted the sanctions. We therefore remand the case to the district court for specification of the authority on which the court relied for imposing sanction and the particular conduct meriting such sanctions.
 
 
 16
 Under the plain language of the Rule, "[t]he key to Rule 11 lies in the certification flowing from the signature to a pleading, motion, or other paper in a lawsuit." Oliveri v. Thompson, 803 F.2d 1265, 1274 (2d Cir.1986), cert. denied, 480 U.S. 918, 107 S.Ct. 1373, 94 L.Ed.2d 689 (1987). Rule 11 provides, in part, that:
 
 
 17
 [t]he signature of an attorney or party constitutes a certificate by the signer that the signer has read the pleading, motion, or other paper; that to the best of the signer's knowledge, information, and belief formed after reasonable inquiry it is well grounded in fact and is warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law, and that it is not interposed for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the costs of litigation ... If a pleading, motion or other paper is signed in violation of this rule, the court, upon motion or upon its own initiative, shall impose upon the person who signed it ... an appropriate sanction.
 
 
 18
 Rule 11 "does not license a district court to sanction any action by an attorney or party that it disapproves of.... Imposition of sanctions must be based on a pleading, motion or other paper signed and filed in federal court." U.S. v. International Brotherhood of Teamsters, 948 F.2d 1338, 1344 (2d Cir.1991), quoting McMahon v. Shearson/American Express, Inc., 896 F.2d 17, 22 (2d Cir.1990). Broad findings of frivolous litigation, dilatory tactics, or bad faith are insufficient to support the award of sanctions under Rule 11; specific findings should identify the particular papers signed by counsel. See McMahon v. Shearson/American Express, 896 F.2d at 22 ("Imposition of sanctions must be based on a pleading, motion or other paper signed and filed in federal court"); F.H. Krear & Co. v. Nineteen Named Trustees, 810 F.2d 1250, 1268 (2d Cir.1987).
 
 
 19
 Neither Judge Platt, nor Magistrate Ross, identified any papers signed by Horn which violated Rule 11. Judge Platt found that Horn's arguments were "frivolous" and "without merit." The magistrate found that sanctions were justified based upon a finding that "Coltrade's claim of entitlement to the seized currency by reliance on the 'innocent owner' defense ... was patently meritless." Though Horn's conduct seems to warrant the imposition of sanctions under Rule 11, the district court's general findings, without greater specificity, are an insufficient basis for its imposition of sanctions under Rule 11. We therefore remand to the district court with instructions to specify which papers were submitted to the court, and by whom, in violation of Rule 11.
 
 
 20
 The government also requested sanctions under 28 U.S.C. § 1927. Though the magistrate's report focused only on Rule 11, sanctions may also be justified under § 1927. That statute provides that any attorney who "multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct." Unlike Rule 11, § 1927 does not focus on any particular paper or document; rather, it "imposes an obligation on attorneys throughout the entire litigation to avoid dilatory tactics." U.S. v. International Brotherhood of Teamsters, 948 F.2d at 1345. On remand the district court should also consider whether sanctions are justified under § 1927.
 
 
 21
 Our remand should not be construed to suggest that the imposition of sanctions was not justified. Based on the record before us, it seems abundantly clear that Horn's conduct and that of Coltrade by its officers may be actionable under both Rule 11 and 28 U.S.C. § 1927; "[w]e ask only that the district court specify the sanctionable conduct and the authority for the sanctions." U.S. v. International Brotherhood of Teamsters, 948 F.2d at 1346.
 
 
 22
 Horn's remaining arguments are without merit. The order of the district court is vacated and the case is remanded for further proceedings consistent with this opinion. We retain jurisdiction to consider any appeal from the further proceedings in the district court.
 
 
 
 [1]
 Coltrade has not appealed