**In re AIR DISASTER AT LOCKERBIE, SCOTLAND, ON DECEMBER 21, 1988.**

v.

**UNITED STATES of America, Third–Party Defendant.**

**M.D.L. No. 799.**

United States District Court, E.D. New York.

Nov. 23, 1992.

---

**1.** *Id.* Actually, as an examination of U.S. Magistrate Judge Allyne Ross' report and recommendation shows, this Court made a substantial effort to identify and relate the particular papers and conduct to the applicable Rules and statutes, but apparently not even this was sufficient to satisfy the Court of Appeals.

---

## MEMORANDUM AND ORDER

PLATT, Chief Judge.

Plaintiffs, by counsel, have moved this Court for an Order awarding sanctions to

plaintiffs against defendants, their insurers, and attorneys pursuant to Rules 11 and 26(g) of the Federal Rules of Civil Procedure, 28 U.S.C. § 1927, and this Court's inherent power. In support of their motion, plaintiffs adopt and rely upon all relevant papers and legal arguments filed by counsel for the United States of America in support of its motion for sanctions dated August 14, 1992 arguing that the conduct of defendants, their insurers, and attorneys throughout their defense merits the imposition of sanctions.

Plaintiffs supplement the motion of the United States by seeking further discovery into defendants' conduct in order to demonstrate that a concrete factual basis exists for the imposition of sanctions.

By Memorandum and Order dated October 27, 1992 (hereinafter "First Mem. & Ord."), this Court denied without prejudice the Government's motion for sanctions. To the extent that plaintiffs' motion relies on the Government's motion, it too is denied without prejudice. But in any event, as discussed in the First Mem. & Ord., and as discussed below, both motions are premature.

## BACKGROUND

This motion arises from the litigation surrounding the terrorist bombing of Pan Am Flight 103 over Lockerbie, Scotland on December 21, 1988. The surviving relatives and personal representatives of those who died sued Pan American World Airways, Inc. ("Pan Am"), Pan Am World Services, Inc. ("PAWS"), Alert Management Systems, Inc. ("Alert"), and Pan Am Corporation ("Pan Am Corp.").[1] On July 10, 1992, the jury returned a verdict in favor of plaintiffs finding defendants had engaged in wilful misconduct.

During the course of the litigation, defendants pursued certain allegations of Messrs. Juval Aviv and Lester Coleman that there was a connection between Government agency operations and the bombing of Pan Am Flight 103 and that the Government had obtained evidence of the bombing in the month beforehand. Pursuant to this strategy, defendants served numerous discovery requests upon various Government agencies and filed a third-party complaint naming the United States Government as third-party defendant.

Both the Government and plaintiffs submit that this conduct merits the imposition of sanctions.[2] Plaintiffs in this motion argue "defendants' baseless allegations cost plaintiffs and their counsel a tremendous amount of time, money, and aggravation," Affidavit of Lee S. Kreindler (hereinafter "Kreindler Aff.") ¶ 9, and "[b]ut for defendants' baseless allegations, virtually every deposition, document request, interrogatory, request to admit, motion, hearing, and other document or proceeding in this case would have been shorter and less complicated." Reply Memorandum in Support of Plaintiffs' Motion for Sanctions (hereinaf-

1. Pan Am Corp. was a Delaware holding company (and still may be if not yet dissolved) with its principal place of business in New York. In December, 1988, Pan Am Corp. owned one hundred percent of the stock of PAWS and Pan Am. Pan Am was (and still may be if not yet dissolved) a New York corporation with its principal place of business in New York. PAWS was (and still may be) a Florida corporation with its principal place of business in Cape Canaveral, Florida. PAWS was a wholly owned subsidiary of Pan Am Corp. until May 31, 1989 when Pan Am Corp. sold its stock in PAWS to Johnson Control, Inc. *See In re Air Disaster at Lockerbie, Scotland on December 21, 1988,* 776 F.Supp. 710, 711 n. 2 (E.D.N.Y.1991). Alert was (and still may be) a corporation organized under the laws of Florida. Before July 1, 1989, Alert's principal place of business was in Valley Stream, New York. On July 1, 1989, Alert relo-

cated its principal place of business to Miami, Florida. *Id.* Before the sale of PAWS to Johnson Control, Inc., Alert was a wholly owned subsidiary of PAWS. When the stock in PAWS was sold to Johnson Control, Alert became a wholly owned subsidiary of Pan Am Corp. *Id.*

In their complaints, the passenger plaintiffs named as defendants Pan Am, PAWS, Alert, and Pan Am Corp., but immediately before commencement of the trial, plaintiffs voluntarily dismissed the claims against PAWS and Pan Am Corp., leaving Pan Am and Alert as defendants. At the opening of trial, defense counsel told the jury to treat Pan Am and Alert as "one." (Tr. 64) Therefore, Pan Am and Alert hereinafter are referred to collectively as "defendants."

2. The Court refers to the First Mem. & Ord. for the specific acts of defendants and their counsel the Government claims are subject to sanctions.

ter "Reply Memorandum") at 5. Plaintiffs note that "recent press reports have indicated that no 'objectively reasonable evidentiary basis' ever existed to support defendants' claims against the United States." Reply Memorandum at 17.[3]

## DISCUSSION

As indicated by the Court in the First Mem. & Ord. as well as in the oral argument, plaintiffs' motion, like the Government's motion for sanctions, is premature. An argument of Pan Am on appeal from the dismissal by this Court of its third-party complaint at the outset of the trial will be that the Court precluded Pan Am from corroborating the stories of Messrs. Aviv and Coleman by denying it access to or discovery of the files of various government agencies counsel believes contain such corroborative evidence.

Apart from the prematurity of the motion, the conclusion this Court reached in deciding the Government's motion for sanctions, that there are substantial questions whether any sanctions may properly be imposed, applies *a fortiori* to plaintiffs' motion.

Briefly stated, before a district court may order the imposition of sanctions under either its inherent power or 28 U.S.C. § 1927 it must find bad faith on the part of the offending attorney. *See Chambers v. Nasco, Inc.,* —— U.S. ——, ——, 111 S.Ct. 2123, 2133, 115 L.Ed.2d 27 (1991); *McMahon v. Shearson/American Exp., Inc.,* 896 F.2d 17, 23 (2d Cir.1990). Under Rules 11 and 26(g), although the Court need not find bad faith, sanctions shall be imposed against an attorney when a pleading, motion or other paper signed and filed in federal court has been interposed for any improper purpose, or where a competent attorney could not have *reasonably believed* that the paper was well grounded in fact and was warranted by existing law.

*Eastway Const. Corp. v. City of New York,* 762 F.2d 243, 254 (2d Cir.1985), *cert. denied,* 484 U.S. 918, 108 S.Ct. 269, 98 L.Ed.2d 226 (1987) (emphasis added).

Plaintiffs have not made a clear showing of bad faith, nor have they demonstrated clearly that the persons sought to be sanctioned have served any papers with an improper purpose or without a reasonable belief that the paper was well grounded in fact. Defendants and their attorneys pursued their own discovery requests on the basis of the reports and testimony of Messrs. Aviv and Coleman and also formulated and served their third-party complaint against the United States in reliance on these two witnesses and the other related information which they obtained from other sources. Plaintiffs may not now look back and argue, without showing bad faith, improper purpose, or an unreasonable belief, that because Aviv and Coleman both eventually turned out to be unreliable defendants and their attorneys should be sanctioned. Our Court of Appeals instructed in *Oliveri v. Thompson,* 803 F.2d 1265, 1275 (2d Cir.1986) "that in imposing Rule 11 sanctions, the Court is to avoid hindsight and resolve all doubts in favor of the signer." As this Court stated in the First Mem. & Ord., parties and their attorneys may base their complaints and their requests for discovery on statements of witnesses, reports of their investigators and hearsay reports and statements of others until such time, if ever, as they are satisfied that the statements and other evidence are not competent or are otherwise untrustworthy. *See Oliveri,* 803 F.2d at 1279 ("A plaintiff does not have to be prepared to meet a summary judgment motion as soon as the complaint is filed."); *Samuels v. Wilder,* 906 F.2d 272, 274 (7th Cir.1990) ("Counsel must investigate, but need not have in hand before filing enough proof to establish the case.").

3. Plaintiffs cite specific acts of conduct by defendants and their counsel that plaintiffs claim are sanctionable, including, *inter alia,* defendants' "baseless" allegations that one or more of the baggage handlers in Frankfurt and London had a part in a baggage switch that led to the bombing of Flight 103. Plaintiffs claim these allegations forced them to go to the most extreme efforts to demonstrate the truthfulness of the conclusions reached by United States and British police as to the origins of the bomb. Moreover, plaintiffs allege that there is strong evidence that on the eve of trial defendants and/or their counsel leaked to *Time* magazine and ABC's *Nightline* program documents containing false, inadmissible and highly prejudicial information.

Thus, it was an appropriate use of discovery for defendants' attorneys to question fact witnesses about any possibility as to how the bomb might have been placed on board Flight 103. As counsel argues, "such questioning could lead to relevant evidence" in further support of its allegations. Memorandum in Opposition to Plaintiffs' Motion for Sanctions at 6.

■ Plaintiffs argue that this Court should impose sanctions on defendants' attorneys for "pursuing a campaign of 'disinformation'" by planting false stories in the media. However, although Mr. Aviv may have leaked his report to the media, plaintiffs have presented to the Court no concrete evidence that defendants or their counsel were in any way involved in a leak of information to the media. Plaintiffs note that further discovery will help to determine what information was fed to the media, by whom and for what purpose, but it is not appropriate for the Court to decide the discovery issue at this time given the premature nature of this motion. If and when plaintiffs renew their motion for sanctions, the Court will then address plaintiffs' request for further discovery.

■ Finally, the Court admonishes plaintiffs, as it did the Government in the First Mem. & Ord., that in their motion papers they do not state the authority for the issuance of sanctions with the high degree of specificity required by the Second Circuit in *Coltrade International, Inc. v. United States*, 973 F.2d 128 (2d Cir.1992). In *Coltrade*, the Second Circuit vacated a decision of this Court sanctioning the conduct of an attorney, even though it acknowledged in the majority opinion that based on the record it was "abundantly clear" that the attorney's conduct "may be actionable under both Rule 11 and 28 U.S.C. § 1927." *Id.* at 132. The Second Circuit remanded the case with instructions for this Court specifically to identify each instance of sanctionable conduct and the authority for issuing sanctions in each in-

stance. *Id.* In particular, the *Coltrade* Court found it essential that this Court identify each paper signed by counsel that is subject to Rule 11 sanctions.[4]

In their motion papers, plaintiffs cite several acts on the part of defendants and their attorneys which plaintiffs claim are sanctionable. However, plaintiffs do not state with the degree of specificity required in *Coltrade* the authority under which sanctions may be imposed for each of these separate acts of defendants and their attorneys.

### Conclusion

In short, plaintiffs' motion for sanctions is premature and must be and the same hereby denied without prejudice to renew following the appeal in this case.

SO ORDERED.

---

4. *Id.* Actually, as an examination of U.S. Magistrate Judge Allyne Ross' report and recommendation shows, this Court made a substantial effort to identify and relate the particular papers and conduct to the applicable Rules and statutes, but apparently not even this was sufficient to satisfy the Court of Appeals.