**CAISSE NATIONALE DE CREDIT AGRICOLE-CNCA, NEW YORK BRANCH, Plaintiff-Appellee,**

**v.**

**VALCORP, INC., Defendant,**

**Peter R. Sarasohn, Esq. and Mitchell B. Seidman, Esq., Appellants.**

**No. 916, Docket 93-7892.**

United States Court of Appeals, Second Circuit.

Argued Jan. 31, 1994.

Decided June 29, 1994.

Peter R. Sarasohn, Roseland, NJ (Mitchell B. Seidman, Ravin, Sarasohn, Cook, Baumgarten, Fisch & Baime, on the brief), for appellants.

Gregor F. Gregorich, New York City (Mitchell C. Shapiro, McDermott, Will & Emery, on the brief), for appellee.

Before: FEINBERG, OAKES, and KEARSE, Circuit Judges.

KEARSE, Circuit Judge:

Appellants Peter R. Sarasohn and Mitchell B. Seidman, members of the law firm representing defendant Valcorp, Inc. ("Valcorp"), in the underlying litigation, appeal from an August 9, 1993 judgment of the United States District Court for the Southern District of New York, Kevin Thomas Duffy, *Judge*, awarding plaintiff Caisse Nationale de Credit Agricole–CNCA, New York ("Caisse New York") $25,584.12 against Sarasohn and $26,350.24 against Seidman, as attorneys' fees with respect to proceedings following the filing of papers signed by the respective appellants in violation of Fed.R.Civ.P. 11. On appeal, Seidman and Sarasohn contend that Rule 11 sanctions were inappropriate and that the amount awarded was excessive. For the reasons below, we affirm.

## I. BACKGROUND

The present lawsuit was brought by Caisse New York against Valcorp to recover on a loan on which Valcorp was in default. Valcorp raised various defenses both in its answer to the complaint and in a memorandum filed in opposition to a motion by Caisse New York for summary judgment. The district court eventually granted summary judgment against Valcorp in favor of Caisse New York, a ruling not challenged on appeal.

The sanctions were imposed against Seidman for signing Valcorp's answer to the complaint and against Sarasohn for signing Valcorp's memorandum opposing summary

judgment. The loan transaction, largely as set out in the district court's summary judgment ruling, and the course of the litigation were as follows.

A. *The Loan Transaction and Caisse New York's Claim*

Caisse New York was the New York branch of Caisse Nationale de Credit Agricole ("Caisse") of Paris, France, a banking corporation. Valcorp was the exclusive United States distributor of x-ray medical film manufactured by Sociedad Espanol de Productos Fotograficos Valca, S.A. ("Valca"), a Spanish corporation. Valcorp and Valca were separate entities; neither possessed an ownership interest in the other. In 1988, Valcorp owed Valca a substantial amount for previous purchases of x-ray film.

In May 1988, at the instance of Valca, Valcorp borrowed $5,000,000 from Caisse New York. Valcorp and Caisse New York executed a written agreement (the "Loan Agreement" or "Agreement"), and Valcorp signed a promissory note (the "Note") requiring it to repay the principal to Caisse New York in five semi-annual installments of $833,333, plus a final payment of $833,335 due on May 11, 1992, and to pay interest on any outstanding principal. The Loan Agreement also provided that, as an inducement to Caisse New York's making the loan, Caisse's Madrid branch ("Caisse Madrid") would guarantee the loan. In a separate agreement, Caisse Madrid received a guaranty from Valca. Valca was not a party to the Loan Agreement.

The Loan Agreement provided that in the event Valcorp failed to make payments as required, Caisse New York could declare the outstanding principal amount, plus interest, to be immediately due and payable. It also provided that Caisse New York was allowed to bring collection proceedings against Valcorp or the guarantor and that Caisse New York's enforcement remedies were cumulative and were exercisable sequentially, simultaneously, or concurrently. The Agreement provided that in the event of default, Caisse New York would be entitled to an award of reasonable attorneys' fees expended in connection with collection. The Loan Agreement stated that that document, with its attachments, which included the Note, constituted the parties' complete agreement.

After the loan documents were executed, the proceeds of Valcorp's loan were paid by Caisse New York to Caisse Madrid for the account of Valca, which applied the funds to reduce Valcorp's trade debt to Valca.

For a time, Valcorp made repayments, though, with Caisse New York's permission, some were made in amounts and at intervals different from those required by the Note and Loan Agreement. On January 14, 1992, after Valcorp had failed to make a $183,333 payment scheduled for January 13, Caisse New York declared Valcorp in default and demanded immediate payment of all outstanding principal, then totaling $1,166,666, plus $13,501 in accrued interest. When Valcorp failed to comply, Caisse Madrid issued a credit to Caisse New York for the unpaid amounts, in performance of Caisse Madrid's guaranty.

In February 1992, Caisse New York commenced the present action against Valcorp to recover the above amounts, plus prejudgment interest and attorneys' fees. Valcorp filed an answer ("Answer") admitting that Valcorp had signed the Loan Agreement and Note and had not made the payment scheduled for January 13, but asserting various defenses. The Answer asserted, *inter alia*, that Caisse New York was barred from recovering on the loan because Valcorp had received no consideration for entering into the loan agreement. This defense was asserted notwithstanding the acknowledgement in the Answer that the arrangement had been that "[Caisse] New York would loan $5 million to Valcorp which $5 million would immediately be paid over to Valca, Inc. in order to reduce the amount of accounts payable outstanding from Defendant to Valca, Inc. on account on Defendant's purchases of medical X-Ray film from Valca, Inc." (Answer, "General Allegations" ¶ 6.) In addition, the Answer alleged as a defense that when Valcorp executed the loan documents, Caisse New York had represented to it that in the event of a default, Caisse New York would pursue collection from Caisse Madrid and Valca before instituting suit against Val-

corp. The Answer also requested reformation of the loan agreement documents in order to reflect that alleged representation, and it demanded damages for, *inter alia,* negligent misrepresentation and fraudulent inducement. Valcorp's Answer was signed by Seidman.

Caisse New York moved for summary judgment on the basis of the loan agreement documents and Valcorp's default. Valcorp submitted, *inter alia,* a Memorandum of Law in Opposition to Plaintiff's Motion for Summary Judgment ("Opposition Memorandum"), which argued, *inter alia,* that Caisse New York was not entitled to judgment because (a) there had been no consideration for the loan, and (b) the loan had been "paid in full" when Caisse Madrid performed its guaranty. The Opposition Memorandum also argued that the Loan Agreement and Note should be reformed on the ground of mutual mistake or fraudulent inducement by Caisse New York, in order to reflect Caisse New York's alleged representation that it would forbear from enforcement efforts against Valcorp unless and until collection efforts against Caisse Madrid and Valca failed. In addition, although Valcorp's own Answer had asserted that Caisse New York and Caisse Madrid "are two separate branches of the same banking corporation and are not two separate banks or bank corporations" (Answer, "Affirmative Defenses and Counterclaims" ¶ 2), the Opposition Memorandum stated that "Valcorp has no knowledge with respect to the nature of the relationship" between Caisse New York and Caisse Madrid (Opposition Memorandum at 8) and requested additional discovery on that issue. The Opposition Memorandum was signed by Sarasohn.

In response to the question raised as to its corporate status, Caisse New York filed a reply affidavit, attaching official documentation, to show that Caisse New York and Caisse Madrid were branches of the same bank.

In a Memorandum and Order dated September 17, 1992 ("Summary Judgment Opinion"), the district court granted Caisse New York's motion for summary judgment. The court ruled, *inter alia,* that (1) there was no genuine dispute that Caisse New York and Caisse Madrid were branches of the same bank, and payment on Caisse Madrid's guaranty therefore did not preclude suit by Caisse New York; (2) in light of Valcorp's admissions that the proceeds of the loan were applied to reduce Valcorp's debt to Valca, the Loan Agreement was supported by consideration; (3) since the loan agreement documents constituted the parties' complete agreement, under New York law—which the Agreement and Note provided was to apply—parol evidence would not be admissible to vary the terms of the documents; and (4) in any event, statements that Valcorp attributed to Caisse New York were expressions of opinion or expectation and furnished no basis for Valcorp's claims of fraud or mistake.

A judgment dated October 7, 1992 ("October 1992 Judgment"), was entered in favor of Caisse New York against Valcorp for the unpaid principal and interest, plus $72,378.11 in attorneys' fees. Valcorp did not appeal.

B. *Sanctions*

In addition to ruling against Valcorp on the merits, the district court stated that the arguments raised by Valcorp's attorneys had been "patently sophist and frivolous and designed to delay the rendition of judgment." Summary Judgment Opinion at 19–20. The court asked both sides to submit written comments as to whether it should sanction defense counsel pursuant to Fed.R.Civ.P. 11. After receiving comments, including an *in camera* submission from Valcorp's attorneys (filed under seal as part of the record on this appeal and hereby deemed unsealed to the extent quoted in this opinion), the district court, in a Memorandum and Order dated November 19, 1992, found that "[t]he fact that defendant's claims were baseless should have become readily apparent to defendant's counsel at the time of initial default."

In a Memorandum and Order dated July 23, 1993 ("July 1993 Opinion"), which followed further proceedings the details of which are not material here, the court reiterated its finding that "the Defendant's claims and defenses were unfounded and that this fact should have become readily apparent to

Defendant's counsel at the time of the initial default," July 1993 Opinion at 9, and confirmed its conclusion that Rule 11 sanctions were warranted. The court referred to the criticisms made in its Summary Judgment Opinion and found that the "baseless papers" that violated Rule 11 were the Answer signed by Seidman and the Opposition Memorandum signed by Sarasohn. Noting that Rule 11 requires that any sanction be imposed only against the individual who signed the offending paper, *see Pavelic & LeFlore v. Marvel Entertainment Group,* 493 U.S. 120, 124–25, 110 S.Ct. 456, 458–59, 107 L.Ed.2d 438 (1989), the district court ruled that Seidman would be required to pay Caisse New York's attorneys' fees for the interval following the Answer and before the Opposition Memorandum, and that Sarasohn would be required to pay Caisse New York's attorneys' fees for the period following the Opposition Memorandum. Stating that the awards were designed to be compensatory, and noting that the parties agreed that the fees for both periods totaled $51,934.36, the court entered judgment imposing sanctions against Seidman in the amount of $26,350 and against Sarasohn in the amount of $25,584.

This appeal by Seidman and Sarasohn followed.

## II. DISCUSSION

On appeal, Seidman and Sarasohn contend principally (1) that sanctions were inappropriate because their arguments urging lack of consideration, lack of exhaustion, reformability, and full payment had chances of success, and (2) that even if some sanction were appropriate, the amount awarded was excessive (a) because attorneys' fees were also awarded to Caisse New York in the October 1992 Judgment, and (b) because Caisse New York's proof was inadequate. We are unpersuaded.

Under Fed.R.Civ.P. 11, sanctions may be imposed on a person who signs a pleading, motion, or other paper for an improper purpose such as to delay or needlessly increase the cost of litigation, or does so without a belief, formed after reasonable inquiry, that the position espoused is factually supportable and is warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law. An argument constitutes a frivolous legal position for purposes of Rule 11 sanctions if, under an "objective standard of reasonableness," *Derechin v. State University of New York,* 963 F.2d 513, 516 (2d Cir.1992); *United States v. International Brotherhood of Teamsters,* 948 F.2d 1338, 1344 (2d Cir.1991), it is "clear ... that there is no chance of success and no reasonable argument to extend, modify or reverse the law as it stands," *Mareno v. Rowe,* 910 F.2d 1043, 1047 (2d Cir.1990), *cert. denied,* 498 U.S. 1028, 111 S.Ct. 681, 112 L.Ed.2d 673 (1991); *see also Healey v. Chelsea Resources, Ltd.,* 947 F.2d 611, 626 (2d Cir.1991) ("Rule 11 targets situations where it is patently clear that a claim has absolutely no chance of success.") (internal quotes omitted).

In reviewing a district court's decision with regard to the imposition of sanctions, we apply a deferential standard of review since the district court, which is "[f]amiliar with the issues and litigants, ... is better situated than the court of appeals to marshall the pertinent facts and apply the fact-dependent legal standard mandated by Rule 11." *Cooter & Gell v. Hartmarx Corporation,* 496 U.S. 384, 402, 110 S.Ct. 2447, 2459, 110 L.Ed.2d 359 (1990). The findings of a sanctioning court must of course be sufficient to permit appellate review. As a general matter, however, once the individual who signed the offending paper has been identified, *see Pavelic & LeFlore v. Marvel Entertainment Group,* 493 U.S. at 124–25, 110 S.Ct. at 458–59, the district court need " 'only ... specify the sanctionable conduct and the authority for the sanctions,' " *Coltrade International, Inc. v. United States,* 973 F.2d 128, 132 (2d Cir.1992) (quoting *United States v. International Brotherhood of Teamsters,* 948 F.2d at 1346). All aspects of a district court's decision to award Rule 11 sanctions, including its findings of fact, its assessment of the signer's credibility, and its determination that the legal arguments were frivolous, are reviewed for abuse of discretion. *See Cooter & Gell v. Hartmarx Corporation,* 496 U.S. at 402–05, 110 S.Ct. at 2459–61. Unless the district court "based its rul-

ing on an erroneous view of the law or on a clearly erroneous assessment of the evidence," no abuse of discretion will be found. *Id.*

We see no abuse of discretion in the present case.

A. *The Chance-of-Success Contention*

■ The contention of Seidman and Sarasohn that the defenses they raised in Valcorp's Answer and in opposition to summary judgment had chances of success is meritless. Their argument that the Loan Agreement was void for lack of consideration was preposterous. It is well established that the "slightest consideration is sufficient to support the most onerous obligation" and that the courts are not to inquire into the adequacy of consideration. *Mencher v. Weiss,* 306 N.Y. 1, 8, 114 N.E.2d 177 (1953); *Mandel v. Liebman,* 303 N.Y. 88, 93, 100 N.E.2d 149 (1951). It could not seriously be contended that Valcorp received no consideration for entering into the Loan Agreement. Valcorp's Answer stated that the proceeds of the $5 million loan were to be used to pay part of Valcorp's trade debt to Valca, and an affidavit submitted by Valcorp's president in opposition to summary judgment stated that the proceeds of the loan had been so applied. *See also in camera* affidavit of Mitchell B. Seidman dated October 15, 1992, ¶ 37 (the loan "clear[ly]" effected a "conversion of Valcorp's debt from short-term debt to long-term debt"). The argument of Seidman and Sarasohn that the application of the loan proceeds to reduce Valcorp's interest-free debt to Valca was not consideration because Valcorp incurred an obligation to repay the loan with interest was frivolous.

■ Valcorp also had no chance of success on its assertion that the Loan Agreement and Note should be reformed to show that Valcorp was not the principal debtor, an argument that was properly rejected by the district court for the reasons stated in the Summary Judgment Opinion. The Loan Agreement stated that it incorporated all of the parties' agreements, and the allegations in the Answer and Opposition Memorandum that Caisse New York had fraudulently represented that it would seek collection against Caisse Madrid and Valca before seeking to collect against Valcorp were unsupported by more than conclusory assertions. Further, the assertion that Valcorp believed it was not to be the principal debtor on the loan was belied by the fact that Valcorp in fact repaid more than $3.8 million. The record also included a letter from Valcorp to Caisse New York stating, *inter alia,* that it was "very important for Valcorp to [repay the loan] on its own with no help whatsoever from Valca. We ... want to avoid involving Valca." (Letter dated October 9, 1990, from Valcorp's president to Caisse New York.)

The contention that Caisse New York could not sue Valcorp without first exhausting its remedies against Caisse Madrid and Valca was also contradicted by the Loan Agreement itself. The Agreement provided that Caisse New York could pursue debtor and guarantor concurrently.

■ Finally, the contention that Caisse New York could not recover from Valcorp because Caisse Madrid had made payment to Caisse New York pursuant to Caisse Madrid's guaranty was specious. The premise suggested in the Opposition Memorandum, that Caisse Madrid and Caisse New York were separate entities, was unsupported; coupled with the request for discovery, that suggestion appeared to be designed merely to delay the proceedings. Sarasohn, who signed the Opposition Memorandum, provided no evidence of any inquiry on his part that would have substantiated the proposition that Caisse Madrid and Caisse New York were separate entities. The only proffer on this subject came in Seidman's *in camera* affidavit in opposition to sanctions, which stated that after interviewing witnesses prior to the filing of the Opposition Memorandum, Seidman had discerned "an air of separateness." For example, Seidman stated

> [t]hat ... there was (and still is) an air of separateness to the New York and Spanish operations of [Caisse] and that, at the loan closing, in the minds of both parties this separateness somehow effected [*sic* ] the manner in which this loan was carried out.... Thus, even if plaintiff truly is only one bank with different branches and

is not separate banks as alleged in their reply papers on the summary judgment motion, the *state of mind* of both parties at the time the loan closed was that there was an air of separateness to the New York and Madrid operations to this bank which air of separateness somehow effected [*sic* ] the transaction.

(*In camera* affidavit of Mitchell B. Seidman dated October 15, 1992, ¶ 27 (emphasis in original).) Apparently the air did not prevent Seidman from signing Valcorp's Answer, which asserted that Caisse New York and Caisse Madrid were branches of the same bank.

We note that appellants also contend that the district court should not have found Valcorp's Answer to be a sanctionable paper because the Answer made many assertions that Valcorp did not pursue. Even if we agreed that the making of frivolous assertions in a pleading would not expose the signer to deterrent sanctions if he thereafter did not pursue them, we would reject appellants' present contention. Since the Valcorp Answer plainly asserted lack of consideration, reformability for mistake or fraud, and failure of Caisse New York to exhaust its remedies against Valca and Caisse Madrid, contentions which, as we have observed, had no chance of success, the fact that the Answer also made other assertions which counsel deemed even less meritorious does not make the Answer less sanctionable.

B. *The Amount of the Sanctions*

Seidman and Sarasohn also challenge the amount of the sanctions, contending (a) that the awards against them result in a double recovery because Caisse New York was also awarded attorneys' fees against Valcorp in the October 1992 Judgment, and (b) that Caisse New York's proof of fees was inadequate. The determination of what is a reasonable attorneys' fee to be awarded as a Rule 11 sanction is committed to the discretion of the district court, *see, e.g., Eastway Construction Corp. v. City of New York,* 821 F.2d 121, 123 (2d Cir.), *cert. denied,* 484 U.S. 918, 108 S.Ct. 269, 98 L.Ed.2d 226 (1987), and we see no abuse of discretion here.

The district court specified that its award of fees to Caisse New York from Seidman and Sarasohn was intended to be "solely compensatory." July 1993 Opinion at 11. There is thus some surface appeal to their contention that that award *pro tanto* duplicates the attorneys' fees awarded in the October 1992 Judgment. However, Caisse New York argues that there is no double recovery because it has not been able to obtain satisfaction of its judgment against Valcorp. Seidman and Sarasohn in effect concede that satisfaction has not been achieved, since their reply brief on this appeal states that "even as of today" Caisse New York continues to recover moneys from Valcorp by conducting supplementary enforcement proceedings. (Appellants' reply brief dated December 3, 1993, at 10.) Given the lack of satisfaction of Caisse New York's October 1992 Judgment against Valcorp, we conclude that the double-recovery theory provides no basis for setting aside the district court's award of sanctions against Seidman and Sarasohn. Further, since the principal objective of the imposition of Rule 11 sanctions is not compensation of the victimized party but rather the deterrence of baseless filings and the curbing of abuses, *see, e.g., Business Guides, Inc. v. Chromatic Communications Enterprises, Inc.,* 498 U.S. 533, 552–53, 111 S.Ct. 922, 933–34, 112 L.Ed.2d 1140 (1991); *Pavelic & LeFlore v. Marvel Entertainment,* 493 U.S. at 127, 110 S.Ct. at 460; *Cooter & Gell v. Hartmarx Corp.,* 496 U.S. at 393, 110 S.Ct. at 2454, the court would have been justified in imposing sanctions against Seidman and Sarasohn even had Caisse New York collected its judgment against Valcorp.

Nor is there merit in appellants' attack on the court's decision that $26,350.24 should be paid by Seidman and $25,584.12 should be paid by Sarasohn, for a total sanction of $51,934.36. Caisse New York submitted an affidavit listing the names, hourly rates of, and time spent by, each attorney who worked on the case, along with copies of the invoices it had received reflecting the above amounts for the relevant time periods. With respect to these amounts, appellants stated only that, "from what can be gleaned from these bills, the amount of attorneys [*sic* ] fees incurred

by Plaintiff on and after the date Defendant filed its ... Answer ... totals $51,934.36," and that "[t]he amount of attorneys [*sic* ] fees incurred by Plaintiff on and after the filing of [the Opposition Memorandum] ... total[s] $25,584.12." (Affidavit of Mitchell B. Seidman dated April 28, 1993, ¶ 11.) This information provided an ample basis for the district court's calculation of attorneys' fees, and we cannot conclude that the amount awarded was an abuse of discretion.

C. *Appellate Sanctions*

Caisse New York has moved pursuant to Fed.R.App.P. 38 for appellate sanctions against Seidman and Sarasohn for this appeal. Such sanctions may be appropriate where a party has exhibited "vexatious tactics or manifest bad faith." *Mareno v. Rowe,* 910 F.2d at 1047. While most of appellants' challenges to the imposition of sanctions are frivolous, we conclude that their double-recovery contention, though ultimately unpersuasive, is not frivolous. Accordingly, we exercise our discretion to decline to award sanctions against Seidman and Sarasohn for this appeal, except that we award Caisse double costs.

## CONCLUSION

We have considered all of the arguments advanced by Seidman and Sarasohn in support of their appeal and have found them to be without merit. The judgment of the district court awarding sanctions against them is affirmed. Caisse New York's motion for appellate sanctions is denied.

Double costs to Caisse New York.