**Sarah SCHOTTENSTEIN, Plaintiff,**

v.

**Steven SCHOTTENSTEIN; M/I Homes, Inc.; and Does I through X, Defendants.**

**No. 04 Civ.5851(SAS).**

United States District Court, S.D. New York.

March 2, 2005.

---

243. Lead Counsel Decl. ¶ 86.

247. Lead Counsel Decl. ¶ 85.

Sarah Schottenstein, New York City, Plaintiff pro se.

George S. Locker, New York City, Thomas M. Burton, Pleasanton, CA, Former Attorneys for Plaintiff.

David C. Levine, Baker & Hostetler, LLP, Columbus, OH, for Defendant Steven Schottenstein.

Thomas Edward Riley, Chadbourne & Parke LLP, New York City, for Defendant M/I Homes Inc.

### MEMORANDUM OPINION AND ORDER

SCHEINDLIN, District Judge.

Sarah Schottenstein ("Sarah") brought this action against her father, Steven Schottenstein ("Schottenstein"), and his employer, M/I Homes, Inc. ("M/I Homes"), alleging, *inter alia,* violations of the Eighth and Fourteenth Amendments and seeking habeas corpus relief on behalf of her two minor sisters, Ashley and Abby Schottenstein. In an Opinion and Order dated November 8, 2004, all of Sarah's claims were dismissed for lack of subject matter or personal jurisdiction,[1] with the exception of a conversion claim against Schottenstein, which was subsequently dismissed without prejudice upon consent of the parties.[2] Schottenstein now seeks attorneys' fees and expenses under Rule 11 from Sarah's former attorneys, Thomas M. Burton ("Burton") and George S. Locker ("Locker").

### I. BACKGROUND

Because my Opinion of November 8, 2004, recounts the facts underlying this lawsuit, I summarize only those facts that are relevant to the present motion. In January, 1998, Schottenstein's ex-wife, Jill Schottenstein, filed for divorce in the Court of Common Pleas for Franklin County, Ohio; that court ultimately awarded exclusive custody of Sarah and her younger sisters to Schottenstein.[3] Sarah alleges that while she was in her father's custody Schottenstein prevented Sarah and her sisters from having any contact with their mother.[4] In addition, Sarah alleges that her father successively forced her to attend Suffield Academy in Connecticut caused her "to be locked up in a desert prison camp" in Utah, and committed her against her will to a psychiatric hospital in Kansas.[5] Upon turning eighteen, Sarah moved to New York to join her mother and filed the present suit against Schottenstein and M/I Homes.[6] Sarah's younger sisters continue to live with their father in Ohio.[7]

Burton, who is not admitted to practice in the Southern District of New York, represented Sarah in this action. He in turn enlisted the aid of Locker, who is admitted in this District, to sign the complaint.[8] Locker maintains that he played no other role in this case; he neither drafted papers nor appeared in court on Sarah's behalf.[9] Locker also represents that he was not compensated for his role in this matter.[10] The original complaint, which both Burton and Locker signed, was filed on July 28, 2004. Shortly thereafter, Schottenstein's counsel sent Burton and Locker a letter setting forth numerous grounds for dismissal, including lack of personal jurisdiction, lack of complete diversity of citizenship, lack of subject matter jurisdiction as to the habeas petition, improper venue, and failure to state a claim upon which relief can be granted.[11] The next day,

---

1. *See Schottenstein v. Schottenstein,* No. 04 Civ. 5851, 2004 WL 2534155, at *12 (S.D.N.Y. Nov.8, 2004).

2. *See* 12/28/04 Order.

3. *See Schottenstein v. Schottenstein,* No. 98DR–01–347, slip op. at 30–31 (Ohio Ct.Com.Pl. Jan. 8, 2004) ("Custody Decision").

4. *See* First Amended Complaint ("Am.Compl.") ¶ 18. The factual allegations in the original and amended complaints are nearly identical.

5. *Id.* ¶ 25.

6. *See id.* ¶ 3. Both the original and amended complaints allege seven claims for relief: (1) false imprisonment, (2) invasion of privacy, (3) violation of procedural and substantive due process, (4) violation of the Eighth and Fourteenth Amendments, (5) intentional infliction of emotional distress, (6) conversion, and (7) habeas corpus.

7. *See id.* ¶ 4.

8. *See* 10/5/04 Letter of Locker to Court ("10/5/04 Locker Let.") at 1.

9. *See id.*

10. *See* 2/21/05 Letter of Locker to Court ("2/21/05 Locker Let.") at 2.

11. *See* 8/17/04 Letter of David C. Levine, Counsel to Schottenstein ("Levine"), to Locker and Burton.

August 18, 2004, Sarah filed an amended complaint, signed only by Burton,[12] which differed from the original complaint in only one significant respect: Ashley and Abby Schottenstein were dropped as parties, even though Sarah continued to seek habeas relief on their behalf. On August 19, Schottenstein's counsel sent Burton and Locker a second letter, restating the grounds for dismissal that the amended complaint failed to address as well as pointing out a new defect in the habeas petition caused by the removal of Ashley and Abby as parties.[13]

Schottenstein moved to dismiss the complaint and shortly thereafter, on August 24, 2004, served on Burton and Locker a motion for Rule 11 sanctions.[14] On September 15, after the 21–day "safe harbor" had expired,[15] Schottenstein asked this Court for permission to file his Rule 11 motion. In his letter to the Court, which was also served on Burton and Locker, Schottenstein once again set forth the defects in Sarah's claims.[16] The Court denied Schottenstein's request to make the Rule 11 motion at that time, but stated that the issue of sanctions would be taken up after Schottenstein's pending motion to dismiss was decided.[17] Locker subsequently requested leave to withdraw, which was granted.[18] After all of Sarah's claims, but one, were dismissed for lack of subject matter or personal jurisdiction, Sarah terminated Burton's representation.[19] All of Sarah's claims having been dismissed, I must now address Schottenstein's Rule 11 motion. Schottenstein, Burton, and Locker have each submitted a letter brief to the Court in regard to this motion.

## II. APPLICABLE LAW

Rule 11(b) states, in pertinent part, as follows:

> By presenting to the court ... a pleading, written motion, or other paper, an attorney or unrepresented party is certifying that to the best of the person's knowledge, information, and belief, formed after a reasonable inquiry under the circumstances ... the claims, defenses, and other legal contentions therein are warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law ... [and] the allegations and other factual contentions have evidentiary support or, if specifically so identified, are likely to have evidentiary support after a reasonable opportunity for further investigation or discovery.[20]

If after notice and a reasonable opportunity to respond, the court determines that the Rule 11 standard has been violated, the court may impose sanctions upon the attorneys, law firms, or parties.[21]

"Rule 11 is violated when it is clear under existing precedents that a pleading has no chance of success and there is no reasonable argument to extend, modify, or reverse the law as it stands." [22] "The standard for triggering the award of fees under Rule 11 is objective unreasonableness." [23] Whether an attorney's conduct was unreasonable should be determined not with the benefit of hindsight, but rather on the basis of what was objectively reasonable to believe at the time the pleading, motion or other paper was submitted.[24] Furthermore, all doubts must be resolved in favor of the signer of the pleading.[25]

---

**12.** Burton had in the meantime been admitted *pro hac vice. See* 8/5/04 Order.

**13.** *See* 8/19/04 Letter of Levine to Locker and Burton.

**14.** *See* 9/15/04 Letter of Levine to Court ("9/15/04 Schottenstein Let."), at 1.

**15.** *See* Fed.R.Civ.P. 11(c)(1)(A).

**16.** *See* 9/15/04 Schottenstein Let.

**17.** *See* 9/22/04 Order.

**18.** *See* 10/8/04 Order.

**19.** *See* 1/15/05 Letter of Burton to Court ("Burton Rule 11 Let.") at 3.

**20.** Fed.R.Civ.P. 11(b).

**21.** *See* Fed.R.Civ.P. 11(c).

**22.** *Corroon v. Reeve,* 258 F.3d 86, 92 (2d Cir. 2001).

**23.** *Storey v. Cello Holdings, LLC,* 347 F.3d 370, 387 (2d Cir.2003).

**24.** *See Kamen v. American Tel. & Tel. Co.,* 791 F.2d 1006, 1011–12 (2d Cir.1986).

**25.** *See Rodick v. City of Schenectady,* 1 F.3d 1341, 1350 (2d Cir.1993).

■ "The imposition of sanctions and the determination of the amount of the sanctions are matters left to the district court's discretion."[26] If monetary sanctions are imposed, they need not compensate the aggrieved party for all attorneys' fees incurred as a result of the violation.[27]

## III. DISCUSSION

Having carefully studied Schottenstein's, Burton's, and Locker's submissions, I now conclude that Rule 11 sanctions are warranted against both Burton and Locker. I discuss below my reasons for imposing sanctions and the amount of sanctions to be imposed.

### A. Reasons for Imposing Sanctions

#### 1. Fourteenth Amendment Claim

■ Both the original and first amended complaints asserted a Fourteenth Amendment claim that a reasonable inquiry would have revealed had no chance of success. The third claim of both versions of the complaint alleged that the state of Ohio, at Schottenstein's request, deprived Sarah of her liberty without due process of law in violation of the Fourteenth Amendment by placing her in Schottenstein's custody and subsequently "forcing her ... to be locked up at the Cross Creek prison compound in Utah and the Menninger hospital in Kansas."[28] However, neither version of the complaint named any state official as a defendant. To the contrary, the allegations indicate that Sarah's Fourteenth Amendment claim was asserted solely against Schottenstein and M/I Homes.[29]

■ It is well established that to state a claim under the Due Process Clause, a plaintiff must allege that the defendant's conduct constituted state action.[30] It is equally well settled that "[s]tate action requires ... that 'the party charged with the [constitutional] deprivation must be a person who may fairly be said to be a state actor.' "[31] To satisfy this requirement, "there must be 'such a close nexus between the State and the challenged action that seemingly private behavior may be fairly treated as that of the State itself.' "[32]

Citing *Shelley v. Kraemer*,[33] Burton contends that Sarah's Fourteenth Amendment claim was colorable because the Ohio state court judgment awarding custody of Sarah and her sisters to Schottenstein constitutes state action.[34] This argument overlooks the fact that the state of Ohio's participation in the custody award cannot possibly make Schottenstein, against whom the Fourteenth Amendment claim is asserted, a state actor. To put it simply, Schottenstein was merely a private litigant in the state court. It should have been completely obvious, after any inquiry whatsoever, that there was no state action and, therefore, the Due Process claim was without merit.

#### 2. Eighth Amendment Claim

■ The original and amended complaint also asserted a frivolous Eighth Amendment

---

26. *Savino v. Computer Credit, Inc.*, 164 F.3d 81, 88 (2d Cir.1998). *See also* Rule 11 Advisory Committee Note ("The court has available a variety of possible sanctions to impose for violations.").

27. *See* Fed.R.Civ.P. 11(c)(2) ("[T]he sanction may consist of, or include, directives of a nonmonetary nature, an order to pay a penalty into court, or, if imposed on motion and warranted for effective deterrence, an order directing payment to the movant of some or all of the reasonable attorneys' fees and other expenses incurred as a direct result of the violation.").

28. Complaint ("Compl.") ¶ 33; Am. Compl. ¶ 32.

29. *See* Compl. ¶ 35; Am. Compl. ¶ 34. I noted in my opinion regarding Schottenstein's motion to dismiss that, as drafted, Sarah's claims relate only to her father. *See Schottenstein*, 2004 WL 2534155, at *2 n. 12. Sarah contended in her opposition papers, however, that with the exception of the petition for habeas relief, all her claims were asserted against M/I Homes, as well. *See id.*

30. *See, e.g., Cranley v. National Life Ins. Co. of Vt.*, 318 F.3d 105, 111 (2d Cir.2003).

31. *Id.* (quoting *American Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 50, 119 S.Ct. 977, 143 L.Ed.2d 130 (1999)).

32. *Id.* (quoting *Brentwood Acad. v. Tennessee Secondary School Athletic Ass'n*, 531 U.S. 288, 295, 121 S.Ct. 924, 148 L.Ed.2d 807 (2001)).

33. 334 U.S. 1, 68 S.Ct. 836, 92 L.Ed. 1161 (1948).

34. *See* Burton Rule 11 Let. at 2.

claim. The fourth claim of both versions alleged that Schottenstein's confining Sarah in facilities in Utah and Kansas constituted "cruel and unusual punishment."[35] It is well established, however, that the protections of the Eighth Amendment apply only to convicted criminals.[36] Once again, a reasonable inquiry would have revealed that this claim was entirely without merit.[37]

### 3. Petition for Habeas Corpus Relief

 Both versions of the complaint also asserted an untenable petition for habeas corpus relief on behalf of Sarah's minor sisters.[38] The Supreme Court has stated that "although a federal habeas corpus statute has existed ever since 1867, federal habeas has never been available to challenge parental rights or child custody."[39] Burton argues that *Lehman v. Lycoming County Children's Servs. Agency* should not apply to this case because Sarah, the petitioner, was not a party to the Ohio custody proceedings.[40] This argument is frivolous. The *Lehman* majority gave no indication that there were any circumstances under which federal courts could entertain a habeas petition challenging child custody. As the Supreme Court put it, "extending the federal writ to challenges to state child-custody decisions ... would be an unprecedented expansion of the jurisdiction of the lower federal courts."[41]

Moreover, this Court clearly lacked jurisdiction to grant habeas relief. Only months before Burton and Locker signed the original complaint, the Supreme Court held in a high-profile case that "[t]he plain language of the habeas statute ... confirms the general rule that for core habeas petitions challenging present physical confinement, jurisdiction lies in only one district: the district of confinement."[42] For the purposes of Sarah's habeas petition, the "district of confinement" was the Southern District of Ohio, where Schottenstein lived with his daughters, Ashley and Abby. Burton and Locker thus compounded their sanctionable conduct by bringing a frivolous claim in the wrong court.

### B. The Amount of Sanctions

### 1. Apportionment

 The conduct of both Burton and Locker is sanctionable, but not equally so. Locker signed only the original complaint, which he had no part in drafting.[43] Locker also represented to the Court that before signing the complaint, he asked Burton whether the claims asserted therein were *bona fide*, to which Burton responded in the affirmative.[44] It is clear that Locker relied on Burton's assessment of the claims' validity. Indeed, Locker insists that he had no substantive knowledge of the case beyond Burton's assurances that the claims were viable.[45] While this reliance somewhat mitigates the culpability of his conduct, Locker nonetheless violated Rule 11, which requires a "reasonable inquiry under the circumstances."[46] Substituting another lawyer's

---

**35.** Compl. ¶ 37; Am. Compl. ¶ 36.

**36.** *See, e.g., City of Revere v. Massachusetts Gen. Hosp.,* 463 U.S. 239, 244, 103 S.Ct. 2979, 77 L.Ed.2d 605 (1983) ("[T]he State does not acquire the power to punish with which the Eighth Amendment is concerned until after it has secured a formal adjudication of guilt in accordance with due process of law."); *Weyant v. Okst,* 101 F.3d 845, 856 (2d Cir.1996).

**37.** Both versions of the complaint also assert, in the context of a false imprisonment claim, that the "court orders allowing [Schottenstein] to imprison Sarah ... were unconstitutional in violation of the ... 8th Amendment." Compl. ¶ 27; Am. Compl. ¶ 26. As stated above, it should have been obvious that the protections of the Eighth Amendment did not apply to Sarah because she was not subjected to any punishment as a result of a criminal conviction. It follows that a reasonable inquiry would have revealed that this legal contention was not warranted under existing law and is, therefore, sanctionable.

**38.** *See* Compl. ¶¶ 46–47; Am. Compl. ¶¶ 45–46.

**39.** *Lehman v. Lycoming County Children's Servs. Agency,* 458 U.S. 502, 511, 102 S.Ct. 3231, 73 L.Ed.2d 928 (1982).

**40.** *See* Burton Rule 11 Let. at 1.

**41.** *Lehman,* 458 U.S. at 512, 102 S.Ct. 3231.

**42.** *Rumsfeld v. Padilla,* 542 U.S. 426, 124 S.Ct. 2711, 2722, 159 L.Ed.2d 513 (2004).

**43.** *See* 10/5/01 Locker Let. at 1.

**44.** *See id.*

**45.** *See* 2/21/05 Locker Let. at 1.

**46.** Fed.R.Civ.P. 11(b).

judgment for one's own does not constitute a reasonable inquiry. In short, Locker cannot hide behind Burton. As a signer of the complaint, Locker certified to this Court that the claims it asserted were not frivolous. Moreover, because Burton is not admitted to practice in the Southern District of New York, the complaint could not have been filed without Locker's signature. Therefore, even though Locker was simply helping a colleague, he failed to fulfill his obligations under Rule 11.

■ Nevertheless, Burton deserves by far the greater part of the blame. Locker had no decision-making authority.[47] Thus, while both attorneys share blame for signing the original complaint, Burton alone is responsible for refusing to withdraw the sanctionable claims. In the face of overwhelming arguments that several of his client's claims could not possibly succeed, Burton persisted in asserting them. For instance, rather than responding, as my Individual Rules require,[48] to Schottenstein's letter stating numerous grounds for dismissal, Burton filed an amended complaint that cured only one of the complaint's many defects. In addition, Burton ignored the Court's warnings that several of his client's claims appeared to be untenable.[49] His conduct ultimately left this Court no choice but to consider several frivolous claims in deciding Schottenstein's motion to dismiss.

Consequently, I apportion the award of attorneys' fees and expenses as follows: ninety-five percent to Burton and five percent to Locker.

### 1. Attorneys' Fees and Expenses Incurred by Schottenstein

■ Schottenstein's attorney, David Levine of the Columbus, Ohio, office of Baker & Hostetler LLP, has submitted billing records and time entries indicating that Schottenstein incurred, in total, $74,862 in attorneys' fees and expenses in connection with this matter.[50] In calculating a fee award, however, I am considering only those fees and expenses incurred prior to September 3, 2004, the date on which Schottenstein filed a reply brief supporting his motion to dismiss the amended complaint. Because all the offending claims were dismissed as a result of that motion, it would be inappropriate to award fees incurred after the motion was fully submitted. Moreover, Baker & Hostetler's time sheets indicate that after September 3, the majority of Schottenstein's fees and expenses were incurred in connection with this Rule 11 motion. The Rule allows, but does not require, the district court to award a prevailing party "the reasonable expenses and attorneys' fees incurred in presenting or opposing the motion." [51] Under the circumstances of this case, total fee-shifting is not required in order to achieve the essential purpose of Rule 11, which is deterrence, as opposed to compensation.[52] In any case, Schottenstein's attorneys do not argue that their client, a wealthy real estate developer, suffered a severe financial hardship in defending these claims; indeed, prior to the initiation of this lawsuit, he fought his ex-wife, Jill Schottenstein, in Ohio courts for six years.[53]

The time entries submitted by Baker & Hostetler indicate that prior to September 3, 2004, Schottenstein incurred $52,049.00 in attorneys' fees defending this action. This figure represents just under 206 hours of legal work by two partners and three associates and twenty-three hours of work by two law clerks and a paralegal. In addition, Schottenstein's attorneys billed $591.13 in expenses during that period, for a total of $52,640.13. Having carefully reviewed Schottenstein's counsels' billing statements, I find that this amount of fees and expenses was warranted in light of plaintiff's convoluted

---

**47.** *See* 10/5/01 Locker Let. at 1.

**48.** *See* Individual Rules and Procedures, http://www.nysd.uscourts.gov/Individual_Practices/Scheindlin.pdf, at 3.

**49.** *See, e.g.,* Transcript of 8/24/04 Conference at 10–12.

**50.** *See* Affidavit of David C. Levine ¶ 3

**51.** Fed.R.Civ.P. 11(c)(1)(A).

**52.** *See Cooter & Gell v. Hartmarx Corp.,* 496 U.S. 384, 393, 110 S.Ct. 2447, 110 L.Ed.2d 359 (1990); *Caisse Nationale de Credit Agricole–CNCA, New York Branch v. Valcorp, Inc.,* 28 F.3d 259, 266 (2d Cir.1994).

**53.** *See* Custody Decision at 1.

allegations. Furthermore, the rates charged by Schottenstein's attorneys are somewhat lower than those typically charged by attorneys at comparable law firms in the Southern District of New York.

### 3. Sanctions

Schottenstein is not entitled, however, to recoup all the fees and expenses incurred in connection with defending this action. In both versions of the complaint, Sarah asserted seven claims, four of which were colorable, if barely so. I am, therefore, awarding fees amounting to forty-three percent of attorneys' fees and expenses. Accordingly, sanctions are imposed as follows: Sarah's counsel must pay Schottenstein forty-three percent of $52,640.13, or $22,635.25. As stated above, Burton shall pay ninety-five percent of this amount, and Locker the remaining five percent, or $21,503.50 and $1,131.75, respectively. Payment shall be made within twenty days of this Order.

### IV. CONCLUSION

For the foregoing reasons, Rule 11 sanctions are imposed against Burton and Locker in the manner set forth above. The Clerk of the Court is directed to close this motion [docket # 38] and this case.

SO ORDERED: